UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARNELL LEE, *individually and on behalf of himself and all others similarly situated*,

Plaintiff,

v.

SUTHERLAND GLOBAL SERVICES, INC.,

Defendant.

**DECISION AND ORDER**

6:23-CV-06549 EAW CDH

## <u>INTRODUCTION</u>

Plaintiff Darnell Lee ("Plaintiff") brings this putative collective action asserting that defendant Sutherland Global Services, Inc. ("Defendant" or "Sutherland") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by failing to pay him and other non-exempt employees their full overtime premiums. (Dkt. 1). Presently before the Court is Plaintiff's motion pursuant to 29 U.S.C. § 216(b) to conditionally certify this matter as a collective action and authorize notice to members of the putative collective. (Dkt. 26). Defendant opposes Plaintiff's motion. (Dkt. 31). For the reasons below, Plaintiff's motion is granted in part and denied in part.

## <u>BACKGROUND</u>

This case has been referred to the undersigned for all non-dispositive pre-trial matters.[1] (Dkt. 12; Dkt. 25).

---

[1]    "[A] magistrate judge has jurisdiction over a motion seeking conditional . . . certification [under the FLSA] because it is only a preliminary determination and is

Defendant is a nationwide employer that "provides business process and technology management services." (Dkt. 1 at ¶ 25; Dkt. 31 at 9). Defendant employs hourly employees who generally "assist patrons with phone-based troubleshooting for Sutherland clients' products or services." (Dkt. 31 at 9; Dkt. 31-1 at ¶ 10). Plaintiff and the putative collective are current and former non-exempt hourly employees who worked for Defendant "for at least a portion of time following" December 11, 2021. (Dkt. 1 at ¶¶ 11, 13, 30).

On or about December 11, 2021, Defendant's timekeeping and payroll system, Kronos, "suffered a disruption in service due to a ransomware attack." (*Id.* at ¶ 28). The Kronos outage caused a temporary loss of time and pay data, and Defendant was unable to use Kronos to track hours and pay employees.[2] (*Id.* at ¶ 29; Dkt. 26-2 at ¶ 7).

Plaintiff alleges that in response to the Kronos outage, Defendant "used various methods to estimate the number of hours [hourly employees] worked in each pay period." (Dkt. 1 at ¶ 32). Specifically, Plaintiff claims that "[a]the beginning of the Kronos outage, Sutherland told us we would be paid for the highest number of hours that we had worked in a pay period over the four prior pay periods, even if we worked more hours than that amount." (Dkt. 26-2 at ¶ 10). Defendant utilized this system until December 18, 2021, at which time Plaintiff says Defendant informed

---

not dispositive." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383 (E.D.N.Y. 2010) (collecting cases) (quotation and original alterations omitted).

[2]     The Kronos outage fell in the middle of Defendant's two-week pay period, and Defendant lost access to employees' time data that had been entered from December 5, 2021 through December 11, 2021. (Dkt. 31-1 at ¶¶ 36-37).

employees they "would have to manually clock in and out using an alternative timesheet." (*Id.* at ¶ 9; Dkt. 31-1 at ¶ 55). According to Plaintiff, this manual timekeeping system was "also inaccurate," and Defendant "told us that timekeeping errors occurred." (Dkt. 26-2 at ¶ 12). Defendant's Kronos system was not restored "until on or after January 30, 2022." (*Id.* at ¶ 13).[3]

Plaintiff alleges that his "paychecks during the outage were inaccurate and short in one or more of the impacted workweeks," and he "was not timely paid all wages due to [him] in the pay periods when the wages were due." (*Id.* at ¶¶ 15-16). Plaintiff states that he "know[s] that most or all other nonexempt employes for Sutherland who had to use the Kronos system had the same problems being fully and timely paid for the work [they] did" based on "discussions with [his] co-workers, [his] familiarity with Sutherland's pay practices, [his] observations and experiences, and the documents Sutherland sent to [employees] about the Kronos outage." (Dkt. 26-2 at ¶ 17).

## **DISCUSSION**

## I.    **Legal Standard for Conditional Certification**

"Pursuant to § 207 of the FLSA, employees must be compensated 'at a rate not less than one and one-half times the regular rate at which [they are] employed' for every hour worked in excess of forty in a given workweek." *Hypolite v. Health Care Servs. of N.Y. Inc.*, 256 F. Supp. 3d 485, 491 (S.D.N.Y. 2017) (quoting 29 U.S.C.

---

[3]    According to Defendant, "[t]he Kronos system was restored, and Sutherland resumed its standard timekeeping and payroll practices, effective January 31, 2022. (Dkt. 31-1 at ¶ 74).

§ 207(a)(1)). "Section 216(b) of the FLSA provides that parties suing under [§ 207] may proceed 'for and in behalf of himself or themselves and other employees similarly situated.'" *Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 93 (S.D.N.Y. 2020) (quoting 29 U.S.C. § 216(b)). This is commonly referred to as a "collective action." *Id.* Unlike a class action pursuant to Federal Rule of Civil Procedure 23, "an employee does not become a party to an FLSA collective action unless he or she affirmatively 'opts in' by filing written consent with the court." *Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 3334784, at *3 (W.D.N.Y. Oct. 14, 2009).

"While the [FLSA] does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to permit notices to be sent to potential plaintiffs informing them of the option to join the suit." *Recio v. D'Almonte Enters. Parking Garage, Inc.*, 680 F. Supp. 3d 448, 454 (S.D.N.Y. 2023). "Orders authorizing notice are sometimes referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification mechanism." *Contrera v. Langer*, 278 F. Supp. 3d 702, 712 (S.D.N.Y. 2017). "Where a court refers to 'certifying' a collective action . . . it means only that the court has exercised its discretionary power to facilitate the sending of notice to similarly situated individuals." *Id.* (quotation omitted); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employes, who in turn become parties to a collective action only by filing written consent with the court[.]") (citation omitted). Certification is thus properly understood as "a useful 'case management'

tool for district courts to employ in 'appropriate cases.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)).

"The Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under FLSA." *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 126 (S.D.N.Y. 2022); *see Myers*, 624 F.3d at 554-55 ("In determining whether to [facilitate notice to potential plaintiffs], the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while . . . not required by the terms of FLSA or the Supreme Court's cases, we think is sensible."). At the first stage—typically referred to as "conditional certification"— the plaintiff must only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). The purpose of this first stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* "At the second stage, which typically occurs after discovery is completed, the court determines whether the plaintiffs who opted in are in fact 'similarly situated' to the named plaintiffs." *Hong*, 582 F. Supp. 3d at 126.

Under the two-step method, a plaintiff's burden of proof at the conditional certification stage is low. *Myers*, 624 F.3d at 555. This is because conditional certification "is merely preliminary and subject to reevaluation on a fuller record." *Taveras v. D & J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 43 (S.D.N.Y. 2018)

(quotation omitted). "[A]t this stage, a court should not weigh the merits of the underlying claims[.]" *Tay v. New York & Presbyterian Hosp.*, No. 22-CV-8379 (KMK), 2024 WL 4286226, at *4 (S.D.N.Y. Sept. 24, 2024) (quotation omitted). "Plaintiffs need only proffer substantial allegations of a factual nexus between them and potential opt-in plaintiffs with regard to an FLSA violation." *Taveras*, 324 F.R.D. at 44; *see also Jenkins v. TJX Companies Inc.,* 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012) ("It is axiomatic that, even at this preliminary stage, the Court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice.") (quotation omitted).

"Plaintiffs can meet their burden at the conditional certification stage by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Son v. Hand Hosp.*, 768 F. Supp. 3d 526, 539 (S.D.N.Y. 2025) (quotation omitted). However, "mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 353 (E.D.N.Y. 2008) (quotation and alteration omitted). "[D]eclarations with vague and conclusory allegations and unsupported assertions [are] insufficient to establish that others are similarly situated." *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 23 (W.D.N.Y. 2020) (quotation omitted).

## II.    The Court Will Follow the Two-Step Method Endorsed by the Second Circuit

The two-step method described above was, for many years, "the near-universal practice" among federal courts to certify a collective action. *Tay*, 2024 WL 4286226,

at *4. (quotation omitted). In recent years, however, multiple courts of appeals have rejected the two-step method and articulated their own approaches to certification. *See Richards v. Eli Lilly & Co.*, No. 24-2574, 2025 WL 2218500 (7th Cir. Aug. 5, 2025); *Clark v. A&L Homecare & Training Ctr.*, LLC, 68 F.4th 1003 (6th Cir. 2023); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). In *Clark* in particular, the Sixth Circuit concluded that a court's facilitation of notice upon only a modest showing could result in notice being sent to employees who are not in fact similarly situated, "amount[ing] to solicitation of those employees to bring suits of their own." *Clark*, 68 F.4th at 1010. The *Clark* court concluded that this would run afoul of Supreme Court guidance regarding court-facilitated notice. *Id.*; *see Hoffmann-La Roche*, 493 U.S. at 174 ("Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims."). The Sixth Circuit therefore adopted a more stringent standard, holding that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employes are similarly situated to the plaintiffs themselves." *Clark*, 68 F.4th at 1011. This standard "requires a showing greater than one necessary to create a genuine issue of fact, but less than one necessary to show a preponderance." *Id.*

Defendant argues that "this is an opportune case" for the Court to reject the two-step method and adopt *Clark*'s "strong likelihood" standard. (Dkt. 31 at 15). The Court disagrees. First, the Second Circuit in *Myers* recognized the two-step method as "sensible," *see* 624 F.3d at 555, and has twice since characterized *Myers* as having

"endorsed" the two-step method, *see Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). While Defendant is correct that the Second Circuit has never "expressly mandated" the two-step method (*see* Dkt. 31 at 13), its endorsement of the approach suggests, at the very least, that the Court should not depart from it absent a compelling reason. *Cf. United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) ("It would demand an expression of utmost temerity, if not robust arrogance, for a district court to flout germane guidance of a Circuit Court panel[.]").

Most courts in this Circuit that have had occasion to consider *Clark* (and *Swales*) have continued to follow the two-step method. *See, e.g.*, *Tay*, 2024 WL 4286226, at *6; *West v. LaserShip, Inc.*, No. 21-CIV-5382-LTS-SLC, 2024 WL 1461403, at *6 (S.D.N.Y. Apr. 4, 2024); *Lopez v. St. Luke's Roosevelt Hosp. Ctr.*, No. 23 CIV. 2880 (JPC) (GS), 2024 WL 836480, at *4 n.2 (S.D.N.Y. Feb. 28, 2024); *Lazaar v. Anthem Companies, Inc.*, 678 F. Supp. 3d 434, 440-41 (S.D.N.Y. 2023). Further, in the only instance cited by Defendant where a court in this Circuit adopted the *Clark* standard, the plaintiff moved for certification *after* discovery was complete. *See Pineda v. Big City Realty Mgmt.*, LLC, No. 22-CV-5428 (BMC), 2024 WL 5146068, at *2 (E.D.N.Y. Dec. 17, 2024).

Here, the parties had only engaged in limited discovery at the time the instant motion was filed, and not a single deposition had been taken yet. (*See* Dkt. 31 at 14; Dkt. 31-2 at ¶¶ 9-13; Dkt. 32 at 3). This distinction is relevant because *Clark* contemplates a particular case management process that would be procedurally

impracticable for the Court to institute at this juncture of the litigation. *See Clark*, 68 F.4th at 1011 (instructing district courts to "expedite their decision to the extent practicable . . . If the plaintiffs in an FLSA suit move for court-approved notice to other employees, the court should waste no time in adjudicating the motion . . . [and] may promptly initiate discovery relevant to the motion, including if necessary by 'court order.'") (quoting Fed. R. Civ. P. 26(d)(1)).

Moreover, courts in this Circuit already have an established approach for assessing motions for conditional certification after some discovery has been taken—the "modest plus standard," under which courts *will* look beyond the pleadings and the plaintiffs' affidavits. *See Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 119 (E.D.N.Y. 2020). Courts flexibly apply this heightened standard on a "sliding scale, with progressively more scrutiny applied as more evidence enters the record." *Id.* (quotation omitted). The modest plus standard is rooted in efficiency concerns, recognizing that ignoring relevant discovery at step one creates "an artificial and unnecessary burden" on the Court and defendants, and undermines the effectiveness of conditional certification as a case management tool. *See Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016). Defendant's objection to the two-step method appears to be based on the same efficiency concerns underlying the modest plus standard. (*See* Dkt. 31 at 13) (Defendant arguing that "[d]eploying the two-step process in this matter will be uniquely inefficient and unnecessarily constrain the Court from reviewing the record."). In other words, the Court is able to adequately

address this motion without departing from established Circuit precedent.[4]

Here, because this action had been pending for over 15 months when Plaintiff moved for conditional certification and some discovery had been taken, and as Plaintiff seemingly does not oppose application of the modest plus standard (*see* Dkt. 32 at 3-4 ("In this case, given that some discovery was undertaken, but is not complete, the court should apply the usual modest showing or, at most, modest-plus.")), the Court finds that it would be most efficient to assess Plaintiff's motion under the modest plus standard, "with an understanding that the body of evidence is necessarily incomplete." *See Diaz v. Weinstein Landscaping*, No. 19CV06050JMAST, 2022 WL 801493, at *4 (E.D.N.Y. Feb. 28, 2022), *adopted*, 2022 WL 801322 (E.D.N.Y. Mar. 16, 2022); *see also Wang v. Kirin Transportation Inc.*, No. 20-CV-5410 (KAM) (TAM), 2022 WL 79155, at *3 (E.D.N.Y. Jan. 7, 2022); *Korenblum*, 195 F. Supp. 3d at 482.

III.  **Plaintiff Has Made the Requisite Modest Showing Only for the Period from December 5, 2021 to December 18, 2021**

Applying the two-step method, the Court next considers whether Plaintiff has made the requisite modest showing that he and the potential opt-in plaintiffs were victims of a common policy or plan that violated the FLSA. *See Myers*, 624 F.3d at 555. As an initial matter, while Plaintiff conflates them in his motion papers,

---

[4]     The Court also notes that application of *Clark*'s "strong likelihood" standard would likely not preclude conditional certification, to the extent granted herein, as district courts in the Sixth Circuit applying that standard have granted conditional certification based on similar timekeeping policies by other employers following the Kronos outage. *See, e.g.*, *Albert v. Honda Dev. & Mfg. of Am., LLC*, 752 F. Supp. 3d 869 (S.D. Ohio 2024).

Plaintiff's allegations encompass two distinct timekeeping policies. Defendant implemented the first policy immediately at the start of the Kronos outage. For a single two-week period—December 5, 2021 through December 18, 2021—Defendant calculated its employees' hours based on the highest number of hours they worked during the four previous pay periods. (Dkt. 26-3 at 7). However, after December 18, 2021, Defendant implemented a new policy, requiring its employees to manually input their time on a substitute timekeeping system, SmartSheets. (*Id.*). Defendant utilized this second policy for the remainder of the Kronos outage. (*Id.*).

Plaintiff has shown that there could be similarly situated employees with respect to the first policy. It is essentially undisputed that, immediately following the Kronos outage, Defendant adopted a uniform practice whereby it calculated its non-exempt employees' hours, and concomitantly, their pay, without reference to their actual hours worked. It is also apparent what feature of the policy binds Plaintiff and the putative collective together as victims of the alleged FLSA violation—namely, the use of estimated hours to determine their pay. *See Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 694 (N.D.N.Y. 2015) ("[T]he 'similarly situated' assessment focuses on the features that make the policy or practice unlawful.").

On the record before the Court, the same cannot be said of the second policy. In his complaint, Plaintiff does not reference either SmartSheets or a manual timekeeping system generically, and only states that Defendant "used various methods to estimate the number of hours" employees worked. (Dkt. 1 at ¶ 32). In his declaration, Plaintiff mentions "a manual timekeeping system," but only makes

vague allegations that it was "inaccurate." (*See* Dkt. 26-2 at ¶¶ 12, 14). This sort of unsupported, conclusory assertion does not satisfy the standard for conditional certification.

Plaintiff does include with his motion emails from Defendant's human resources staff, but he does not address them, much less explain their relevance, anywhere in his declaration or briefs. One email, dated January 7, 2022, refers to "very few" payroll exceptions (*i.e.*, discrepancies between pay and hours worked (*see* Dkt. 31-1 at ¶¶ 64-65)). (Dkt. 26-5). A second email, dated January 19, 2022, only states that that week's paycheck will not reflect "bonus, commissions and performance incentives," but otherwise suggests that "all regular and overtime hours" were "process[ed]." (Dkt. 26-6). Plaintiff fails to explain how these emails demonstrate a common policy or plan to deny him and other employees overtime pay. While the Court does not evaluate the merits at this stage, it must find at least some colorable basis for Plaintiff's claim that Defendant subjected him and other employees to a common practice that violated the law. *See Mark v. Gawker Media LLC*, No. 13-CV-4347 AJN, 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) ("The question of whether potential opt-in plaintiffs are similarly situated to Plaintiffs . . . depends in part on what constitutes a FLSA violation.").

In response to Defendant's argument that Plaintiff's allegations are lacking with respect to the SmartSheets system, Plaintiff merely asserts that "it is an employer's burden to keep accurate wage and time records." (*See* Dkt. 32 at 7). The Court does not dispute that, but Plaintiff's burden here is to show some feature of

Defendant's timekeeping system that subjected him and other employees to an FLSA violation, such that their claims warrant collective treatment. *See Alicea v. Walsh Constr. Co.*, No. 3:13-CV-00102 (MPS), 2014 WL 12861246, at *7 (D. Conn. Sept. 30, 2014) (denying conditional certification for a collective because the plaintiffs did not show how the defendant's payroll system "contribute[d] to a violation of the FLSA or how it shows that Plaintiffs are similarly situated to other . . . employees"). Having employees input their own time, in itself, does not violate the FLSA. *See Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 461 (S.D.N.Y. 2011) (noting the FLSA "does not prescribe any particular form of recordkeeping"). And without more, disparate instances of timekeeping discrepancies do not evince a common plan. *See Saunders v. City of N.Y.*, 594 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) (explaining that "the threshold requirement enabling an FLSA claim to proceed as a collective action is that all of the plaintiffs are sufficiently similarly situated" and that "instances of insufficient overtime compensation represent[ing] isolated occurrences" do not satisfy this standard) (quotation omitted); *see also Ahmed v. T.J. Maxx Corp.*, No. 10-CV-3609 ADS ETB, 2013 WL 2649544, at *15 (E.D.N.Y. June 8, 2013) (explaining that where a facially lawful policy exists, there must be evidence that failure to follow that policy was a widespread, common practice for collective treatment to be warranted). Plaintiff fails to identify any feature of the SmartSheets system that binds Plaintiff and the putative collective together as victims beyond his vague and conclusory assertion that it was inaccurate. This is insufficient to satisfy even the modest showing standard. *See Zamora v. L Plus L Prods. LLC*, No. 19 CIV. 1506 (GBD)

(RWL), 2019 WL 5460559, at *5 (S.D.N.Y. Oct. 15, 2019) ("[The named plaintiff's] assertions . . . remain overly conclusory and therefore insufficient to meet even the modest showing required to obtain conditional collective certification."); *Ramos v. PJJK Rest. Corp.*, No. 15-CV-5672 (PKC), 2016 WL 1106373, at *4 (S.D.N.Y. Mar. 10, 2016) ("Given plaintiffs' vague factual averments, they have not made the factual showing required to include all hourly employees in the collective action."); *cf. Zivali*, 784 F. Supp. 2d at 460 (explaining that conditional certification had been granted because the plaintiff had detailed the manner in which the defendant's timekeeping system failed to accurately account for all time worked).

For these reasons, the Court concludes that Plaintiff has not satisfied the modest showing standard for any pay period after December 18, 2021. The Court will therefore only conditionally certify a collective for the period from December 5, 2021 to December 18, 2021, as modified by Section IV.A. *See Son*, 765 F. Supp. 3d 526 at 540 ("Courts performing the collective action certification inquiry have discretion to certify a different group of individuals than that sought by the plaintiff.") (quotation and alteration omitted).

## IV.    **Scope of Notice**

Having found that Plaintiff has made the requisite modest factual showing for the period from December 5, 2021 to December 18, 2021, the Court now turns to the scope of the proposed notice. In opposing conditional certification under the two-step method, Defendant raises three issues: (1) that some members of the putative collective waived their right to participate in this collective action by signing

- 14 -

mandatory arbitration agreements; (2) that some members of the putative collective released any FLSA claims against Defendant for the relevant time period through a settlement in another collective action; and (3) that putative collective members' claims are time-barred. (Dkt. 31 at 20-25). Defendant argues that these issues either preclude conditional certification, or, in the alternative, that they require notice to the putative collective to be more limited in scope than Plaintiff proposes. The first argument can be addressed summarily with respect to the arbitration agreements and release of claims. Since no showing of numerosity is required for collective actions, *see Jenkins*, 853 F. Supp. 2d at 320, and because Defendant acknowledges that these issues only apply to a subset of the putative collective, Defendant provides no rationale for why these issues would preclude conditional certification as a whole, rather than merely limit the number of employees who receive notice. The Court therefore addresses the arbitration agreements and release of claims only to the extent they impact the scope of the proposed notice. The statute of limitations, on the other hand, does affect the putative collective as a whole, and the Court addresses this issue accordingly below.

> ### A.  <u>Arbitration Agreements</u>

Defendant states that beginning on or about September 1, 2017, it required its employees to sign mandatory arbitration agreements as part of their onboarding process. (Dkt. 31-1 at ¶ 12). Defendant includes with its opposition papers an unsigned, sample agreement, which provides that an employee who signs it, *inter alia*, waives their right to bring or participate in a collective action. (Dkt. 31-1 at 15).

According to Defendant, 1,463 (approximately 41%) of the 3,594 non-exempt employees who worked during the Kronos outage executed these arbitration agreements. (*Id.* at ¶ 14). Plaintiff did not execute an arbitration agreement. (*Id.* at ¶ 28). Defendant argues that if the Court conditionally certifies a collective, it should not include employees who signed mandatory arbitration agreements because "it would result in significant individualized procedural issues and prolonged motion practice with respect to arbitration." (Dkt. 31 at 21, 30).

Courts in the Second Circuit generally follow two approaches with respect to notifying putative collective members who are subject to binding arbitration agreements. "The first approach permits notice of the collective action to be sent to putative class members without concern for the existence of applicable arbitration agreements, recognizing that the enforceability of any underlying arbitration agreements will have to be determined at a later stage in the litigation." *Sanchez v. Clipper Realty, Inc.*, No. 21 CIV. 8502 (KPF), 2024 WL 3159821, at *6 (S.D.N.Y. June 25, 2024) (quotation omitted). "The second approach allows courts to find that putative collective members who have signed binding arbitration agreements that cover their FLSA claims . . . are not similarly situated to [a] named plaintiff" who did not sign an arbitration agreement. *Id.* (quotation and alteration in original omitted).

Here, the Court will follow the second approach. In *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14 (W.D.N.Y. 2020), the court declined to include as part of a proposed collective employees who had executed arbitration agreements, finding those employees were not similarly situated to the named plaintiffs who had not executed

the arbitration agreements. *Id.* at 27. Specifically, the *Errickson* court noted that "[t]he attendant procedural and legal issues unique to those who have signed Arbitration Agreements militate against finding that this group of employees is similarly situated to [the named plaintiffs who had not executed the agreements]." *Id.*

The Court agrees that "[i]t would be a disservice to judicial efficiency" to certify a collective encompassing employees who signed arbitration agreements, when those employees will be "subject to additional, prolonging motion practice which will likely disqualify them from the [collective]." *Morangelli v. Chemed Corp.*, No. 10 CIV. 0876 (BMC), 2010 WL 11622886, at *3 (E.D.N.Y. June 17, 2010); *see also McLean v. Cornucopia Logistics, LLC*, No. CV 19-0864 (JS)(AYS), 2021 WL 3709260, at *5 (E.D.N.Y. Aug. 20, 2021) ("It would be a waste of resources to provide for collective action certification notices to be drafted and circulated to [employees who signed arbitration agreements], only to have the collective undoubtedly de-certified at the next phase of the proceedings.").

In his reply, Plaintiff does not specifically challenge the existence of valid arbitration agreements as to any members of the putative collective.[5] Instead, he

_____

[5] Plaintiff does seem to suggest that it was incumbent on Defendant to produce each individual signed arbitration agreement, citing *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020) and *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019). (*See* Dkt. 32 at 4, 5 n.3). But as the *Errickson* court explained, *Bigger* and *In re JPMorgan* concerned whether the Court "is precluded from authorizing notice based on the existence of valid Arbitration Agreements." 447 F. Supp. 3d at 447. However, if no such preclusion exists, the Court can still determine that individuals who have signed arbitration agreements are no similarly situated to the named plaintiffs, and therefore exclude those individuals from the proposed collective. *See id.* ("is precluded from authorizing notice based on the existence of valid Arbitration

asserts that such an inquiry is not appropriate at the conditional certification stage. (Dkt. 32 at 4). However, where a defendant has shown the existence of a facially enforceable arbitration agreement, courts have found that it would be inefficient to defer consideration of such agreements until step two. *See, e.g.*, *Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-729 (BMC), 2018 WL 6492741, at *5 (E.D.N.Y. Dec. 10, 2018) (excluding employees who signed arbitration agreements from putative collective because "it would likely precipitate an immediate motion by defendants to compel arbitration of these employees' claims on an individual basis," which "would forestall the collective action process and likely eliminate these plaintiffs from the collective anyway—all before we had proceeded to the second step").

The Court finds that deferring consideration of the relevance of facially enforceable arbitration agreements, particularly when they would impact a significant number of potential opt-in plaintiffs, would be inconsistent with the Court's "managerial responsibility" under section 216(b) "to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche*, 493 U.S. at 170-71. The Court will therefore not authorize notice to employees who have executed arbitration agreements.

## B. <u>Release of FLSA Claims</u>

Defendant also argues that if the Court conditionally certifies a collective, it should not include employees who settled their FLSA claims against Defendant in

Agreements.")

another collective action, *Roper v. Sutherland Global Services, Inc.*, No. 3:23-CV-00360 (S.D. Tex.) ("*Roper*"). (Dkt. 31 at 22, 30). Defendant represents that on or about February 20, 2024, the district court in *Roper* "approved a collective settlement in a matter covering FLSA claims of non-exempt employees during the period of August 15, 2020, through August 15, 2023." (*Id.* at 22; Dkt. 31-1 at ¶ 76). Defendant includes with its opposition papers a copy of the Stipulation of Settlement and Order approving the settlement. (*See* Dkt. 31-1 at 73-106). Under the terms of the settlement, each settlement check included the following language:

> FINAL RELEASE OF CLAIMS:
>
> By endorsing this check, I agree to be bound by the terms of the Settlement Agreement enclosed with this check, and further release Sutherland and any parties identified as Released Parties from any and all wage and hour claims under the Fair Labor Standards Act and state wage and hour laws, brought or which were or could have been brought in *Roper v. Sutherland Global Services, Inc.*, No. 3:23-cv-00360 (S.D. Tex.).

(*Id.* at 93-94). The settlement further defines "Released Claims" as "any and all claims under the Fair Labor Standards Act . . . that accrued on or before the Approval Date against any or all of the Sutherland Releasees," including unknown claims." (*Id.* at 83). Defendant states that approximately 339 non-exempt employees who worked during the Kronos outage cashed settlement checks from *Roper*, and of those 339 employees, 246 did not sign arbitration agreements. (*Id.* at 12, ¶ 83 n.3).

Unlike their divergent approaches to arbitration agreements in this context, courts in the Second Circuit are generally uniform in the view that considering the release of FLSA claims through a prior settlement is not appropriate at the

conditional certification stage. *See Alcantara-Flores v. Vlad Restoration Ltd.*, No. 16CV3847MKBRML, 2017 WL 1655187, at *3 (E.D.N.Y. May 2, 2017) (noting "the law is clear" that inquiring into potentially preclusive settlements "is premature at the first step of FLSA conditional certification" and collecting cases).

The *Roper* settlement also poses fewer case management issues than the arbitration agreements. With respect to the latter, Defendant is likely to move to compel arbitration as to each opt-in plaintiff who signed an arbitration agreement. The enforceability of these arbitration agreements would potentially be subject to different state contract laws and the opt-in plaintiffs may have a host of individualized defenses. Given the number of employees who signed arbitration agreements, these issues could spawn an unmanageable degree of ancillary litigation that overwhelms the Court and delays resolution of the claims of the plaintiffs who did not sign arbitration agreements.

By contrast, addressing the eligibility of opt-in plaintiffs who released their claims through the *Roper* settlement is unlikely to require an especially intensive examination of individualized circumstances. *Cf. Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-04950 JFB ARL, 2009 WL 1706535, at *9 (E.D.N.Y. June 16, 2009) (granting conditional certification over defendant's "individualized inquiry objection as it relates to certain opt-in plaintiffs' alleged release agreements" because "[t]he legal validity of such agreements are likely to apply across the board or fail as a matter of law"). If the issue of the release arises, the Court will only have to determine the extent to which the release precludes the claims in this action, and whether a

particular opt-in plaintiff cashed a settlement check. The issue of the release is also less likely to arise because there are significantly fewer members of the putative collective who cashed settlement checks than signed arbitration agreements. As a result, the *Roper* settlement does not raise the same efficiency concerns as the arbitration agreements. The Court will therefore not exclude employees who have cashed settlement checks from *Roper* from receiving notice.

### C.   Statute of Limitations

Defendant argues that Plaintiff is not similarly situated to the members of the putative collective because their claims will fall outside the statute of limitations by the time they opt in to the lawsuit. (Dkt. 31 at 23). This is because "[i]n a FLSA collective action, the statute of limitations runs for each plaintiff until he files written consent with the court to join the lawsuit."[6] *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 SLT, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011).

Defendant first asserts that Plaintiff fails to sufficiently allege that Defendant's alleged FLSA violation was willful, for purposes of notifying employees whose claims accrued more than two years ago. (Dkt. 31 at 24); *see Cooke v. Frank Brunckhorst Co., LLC*, 722 F. Supp. 3d 127, 142 (E.D.N.Y.) ("the statute of limitations for a FLSA violation is two years, except when the violations are willful, in which case the statute of limitations is extended to three years), *on reconsideration in part*,

---

[6]    Defendant argues in the alternative that the Court should not authorize notice to employees whose claims are outside the statute of limitations. (Dkt. 31 at 30). However, because, as discussed below, every employee's claim is technically outside the statute of limitations, the Court treats this argument as identical to Defendant's argument that the Court should not conditionally certify a collective because of the statute of limitations.

734 F. Supp. 3d 206 (E.D.N.Y. 2024). However, "[c]ourts in this circuit have generally held that where willfulness is in dispute, a three year statute of limitations applies at the conditional certification stage." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012). Defendant cites only a single case where a court scrutinized a plaintiff's allegations of willfulness on a motion for conditional certification. *See Hunter v. Next Level Burger Co., Inc.*, No. 23-CV-03483 (HG), 2024 WL 686929, at *3 (E.D.N.Y. Feb. 20, 2024). The Court does not find this case persuasive because it relied exclusively (and admittedly) on decisions analyzing willfulness in the context of a motion to dismiss, even though motions to dismiss are analyzed under a different standard than motions for conditional certification. *See Hong*, 582 F. Supp. 3d at 130 (distinguishing such cases on the same basis). Since the willfulness of Defendant's alleged FLSA violation is in dispute (*see* Dkt. 1 at ¶ 61), the Court will follow the general approach in this Circuit and apply a three-year notice period. *See Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (noting that courts "routinely approve a three-year notice period" where willfulness is disputed and collecting cases).

Defendant goes on to argue that "[e]ven assuming . . . that the three-year statue of limitations for willful violations applies for purposes of the notice period, opt-ins will likely fall outside of the statute of limitations." (Dkt. 31 at 25). Strictly speaking, this is true. "A cause of action under the FLSA accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated." *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 277

(E.D.N.Y. 2015) (quotation omitted). And because the Court has found that similarly situated employees could exist only for the period from December 5, 2021, to December 18, 2021, the last applicable payday on which a potential opt-in plaintiff could have been underpaid was December 23, 2021, *i.e.*, more than three years ago. (*See* Dkt. 26-3 at 6).

Nevertheless, there are circumstances present that weigh in favor of notifying employees whose claims are outside the three-year statute of limitations period. First, the parties executed a tolling agreement on October 23, 2023, under which they agreed to toll the statute of limitations for each opt-in plaintiff by 35 days, in order to accommodate a 35-day extension for Defendant to respond to the complaint. (Dkt. 31-2 at ¶¶ 4, 7). The tolling agreement would thereby extend the cutoff date for opt-in plaintiffs' claims to January 27, 2022. Because Plaintiff moved for conditional certification on January 10, 2025, before the potential opt-in plaintiffs' claims became time-barred under the three-year limitations period, there is still a possibility that an opt-in plaintiff's claim could be revived through equitable tolling. *See Lopez v. Thermo Tech Mech. Inc.*, No. 20-CV-9113 (LTS) (BCM), 2023 WL 3756883, at *7 (S.D.N.Y. May 31, 2023) (noting that equitable tolling is only available when a plaintiff moves for conditional certification before potential opt-in plaintiffs' claims become time-barred). And indeed, courts regularly toll the statute of limitations for the period that a plaintiff's motion for conditional certification was pending before the court. *See, e.g.*, *Jibowu*, 492 F. Supp. 3d at 127; *Schaefer v. M & T Bank Corp.*, 122 F. Supp. 3d 189, 199 (S.D.N.Y. 2015); *McGlone v. Cont. Callers, Inc.*, 867 F. Supp.

2d 438, 445 (S.D.N.Y. 2012).

Defendant's argument also overlooks the fact that whether opt-in plaintiffs' claims are time-barred is a separate issue from whether the court should authorize notice to employees with potentially time-barred claims. Because equitable tolling issues often arise in FLSA collective actions, courts frequently authorize an overinclusive notice period—often keying notice to three years prior to the filing of the complaint—and defer consideration of the statue of limitations until after the opt-in period. *See Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015). Through this approach, a court avoids any merits-based determinations at the conditional certification stage, while preserving the opportunity for opt-in plaintiffs and defendants to make their respective arguments regarding timeliness and/or equitable tolling at a later date. *See Hong*, 582 F. Supp. 3d at 129.

The Court finds that, given the circumstances discussed above, potential opt-in plaintiffs may have viable equitable tolling arguments in this case, and the statute of limitations should not impact the temporal scope of notice. The Court, however, notes that no request for equitable tolling has been made, and expresses no view as to the merits of any theoretical argument for equitable tolling.

## V.    **Distribution of Notice**

Plaintiff requests that the Court permit the distribution of notice by U.S. Mail, email, and text message "with hyperlinks to a website dedicated to hosting the proposed Notice and Consent Form only." (Dkt. 26-1 at 24). Defendant does not raise any objections to Plantiff distributing notice by email. Thus, the Court will the

distribution of notice by email.[7] *Martin v. Sprint/united Mgmt. Co.*, No. 15 CIV. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) ("Courts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases."); *see also Errickson*, 447 F. Supp.3d at 31 ("The realities of modern communication suggest that electronic notice is a helpful companion to notice by regular mail[.]")

Defendant also does not assert any objections to the use of a website for hosting the notice and consent forms. But having carefully reviewed Plaintiff's submissions, the Court finds that Plaintiff's description of the proposed website is too cursory and unclear to permit its use at this time. For example, Plaintiff states that "Santana" will host the website without any explanation as to what "Santana" means in this context. (*See* Dkt. 26-1 at 25). Moreover, numerous courts in this Circuit have denied requests by plaintiffs to create a website for potential opt-in employees to electronically submit consent forms. *See Rieske v. Gov't Emps. Ins. Co. Inc.*, No. CV-21-4122-JMA-AYS, 2022 WL 17127745, at *9 (E.D.N.Y. Nov. 22, 2022) (collecting cases). Plaintiff must provide the Court with additional information before it permits the use of a website—specifically, why it is necessary in light of the other methods of notice and consent, and how the website will mitigate the risk that opt-in plaintiffs rely solely on Plaintiff's counsel. *See Ding v. Mask Pot Inc.*, 347 F.R.D. 417, 432 (E.D.N.Y. 2024). Plaintiff's explanation must demonstrate how its website will be distinguishable from those that were not permitted in the cases cited in this paragraph.

---

[7] The Court will reserve decision as to the content of the email notice until it reviews the parties' submission pursuant to Section VI.

Defendant objects to the distribution of notice by text message. Courts in this Circuit have generally permitted distribution of notice by text message only "where the nature of the employer's business facilitate[s] a high turnover rate among employees." *Park v. FDM Grp. Inc.*, No. 16CV01520LTSSN, 2019 WL 2205715, at *7 (S.D.N.Y. May 22, 2019) (quotation omitted). Recent decisions have continued to follow this approach. *See, e.g.*, *Burgard v. Int'l Bus. Machines Corp.*, No. 24-CV-02885 (PMH), 2025 WL 785023, at *5 (S.D.N.Y. Mar. 12, 2025).

Plaintiff has not made any showing that there was a high turnover rate among Defendant's employees. Instead, his argument in support of distributing notice by text message is merely that it will be convenient for potential opt-in plaintiffs. (*See* Dkt. 26-2 at ¶ 22; Dkt. 26-1 at 26). The Court does not find that this basis alone justifies distributing notice via text message. Plaintiff's reply also fails to address Defendant's objection and the relevant caselaw from this Circuit that Defendant cites in support of its position. The Court will therefore not authorize distribution of notice by text message.

## VI.    <u>Content of Notice and Consent Form</u>

Having now substantively modified the scope of the proposed collective, the Court directs the parties to meet and confer for the purpose of drafting a revised proposed notice and consent form, the contents of which should be consistent with this Decision and Order. The parties shall jointly submit a revised proposed notice and consent form within 21 days of entry of this Decision and Order.

In the event the parties are unable to agree, they are directed to file a joint submission of no more than 20 pages consisting of each party's proposal and legal authority setting forth the areas of disagreement and the parties' respective positions as to each area of disagreement within 21 days of entry of this Decision and Order. Where possible, legal authority should principally come from courts in the Second Circuit.

## VII.    Production of Putative Collective Members' Contact Information

Plaintiff requests that the Court order production of the contact information for the members of the putative collective. (Dkt. 26-1 at 23). Specifically, Plaintiffs request in Excel format the "full name; last known addresses with city, state, and zip code; last known e-mail addresses (non-company address if applicable); last known telephone numbers; beginning dates of employment; and ending dates of employment (if applicable)" of all putative collective members. (Dkt. 26-10 at 2). Defendant does not raise any objections to producing this information.

The information requested by Plaintiff is of the sort that courts regularly permit production of when granting conditional certification. *Martin*, 2016 WL 30334, at *19 ("Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action.") (collecting cases). Thus, the Court will require Defendant to produce the requested contact information within 10 days of the Court's order approving the final notice. However, the contact information shall be limited to those employees who worked during the

December 5, 2021 to December 18, 2021 pay period, for which the Court has granted conditional certification, and shall not include employees who executed arbitration agreements.

## VIII.  <u>Opt-In Period and Reminder Notice</u>

Plaintiff proposes a 60-day opt-in period from the dissemination of notice and consent forms. (Dkt. 26-10 at 3). Defendant raises no objections. A 60-day opt-in period is the norm in this Circuit. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 445 (E.D.N.Y. 2014). Thus, the Court will permit a 60-day opt-in period.

Plaintiff also proposes sending a second, identical copy of the notice and consent form 30 days after the initial dissemination to putative collective members. (Dkt. 26-10 at 3). Defendant again raises no objections. Courts generally find such reminder notices to be appropriate. *See Racey v. Jay-Jay Cabaret, Inc.*, No. 15 CIV. 8228 (KPF), 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (collecting cases). Thus, the Court will permit Plaintiff's counsel or the third-party administrator to send identical copies of the notice and consent form 30 days after their initial dissemination.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for conditional certification (Dkt. 26) is granted to the extent described above.

The parties are directed to meet and confer the purpose of submitting a revised proposed notice and consent form within 21 days of entry of this Decision and Order, or, if the parties are unable to agree, a joint submission of no more than 20 pages

setting forth the parties' proposals and areas of disagreement.

Within 10 days of the Court's order approving the revised notice, Defendant shall produce the requested contact information in an Excel spreadsheet, limited to the employees who worked for Defendant during the December 5, 2021, to December 18, 2021 pay period and who did not execute arbitration agreements.

Within 20 days of the Court's order approving the revised notice, Plaintiff's counsel or the third-party administrator shall send a copy of the Court-approved notice and consent form to the putative collective members by U.S. Mail or email. Plaintiff's counsel or the third-party administrator may follow up by telephone with putative collective members whose mailed or emailed contact information is not valid.

**SO ORDERED**.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:   Rochester, New York
         August 22, 2025